1

2

3

4

5

6          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
7                   AT SEATTLE

8  LEONARD CARTER,

9                            Plaintiff,          Case No. C14-158 TSZ-BAT

10          v.                                   **REPORT AND**
                                                 **RECOMMENDATION**
11  CAROLYN W. COLVIN, Acting
   Commissioner of Social Security,
12
                            Defendant.
13

14          Leonard Carter appeals the ALJ's decision finding him not disabled.  In this case, the

15  ALJ found at steps one through three that Mr. Carter last worked in May 2008; that major

16  depression with psychotic features, personality disorder and left lower extremity pain were

17  severe impairments and that these impairments did not meet the requirements of the Listings.

18  Tr. 11-13.  The ALJ determined that with these impairments, Mr. Carter retained the Residual

19  Functional Capacity ("RFC") to perform sedentary work with the following restrictions:  he

20  could work independently but must have limited face-to-face interaction with co-workers and the

21  general public.  Tr. 13.  The ALJ ended her evaluation of Mr. Carter's claim at step four where

22  she found Mr. Carter could perform his past work as a telemarketer, and was therefore not

23  disabled.  Tr.  18.  The Appeals Council denied Mr. Carter's request for review, making the

REPORT AND RECOMMENDATION - 1

ALJ's decision the Commissioner's final decision.[1]  Tr. 1.

Mr. Carter does not contest the ALJ's steps one through three findings.  Rather, he contends that by misevaluating his testimony and the medical opinions of James Hopfenbeck, M.D., and James Czysz, Ph.D., regarding the severity of his mental health impairments, the ALJ incorrectly found he retained the RFC to perform his past work.  Based on these errors, Mr. Carter argues the Court should order an award of benefits because the evidence shows he cannot perform his past work or any other work, and is thus disabled as a matter of law at step five. Dkt. 24 at 12.   As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.    The ALJ's assessment of Mr. Carter's credibility**

   ***1.    Standard of review***

As an initial matter, the parties spar over the applicable standard of review.  The Commissioner argues,[2] contrary to controlling Ninth Circuit precedent, the ALJ need never provide "clear and convincing" reasons for rejecting a claimant's testimony because the Agency's regulations require, at most, only substantial evidence.  Dkt. 25 at 3 (*citing* SSR 96-7p; *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003)).  The argument is foreclosed.  The Ninth Circuit requires this Court in reviewing an ALJ's treatment of a claimant's testimony to apply the following standard: "If there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir.

---

[1] The remaining procedural history is not at issue and thus is not discussed.
[2] This argument has recently appeared in other cases.  *See e.g., Smith v. Colvin,* C14-66-JLR (W.D. of WA).

REPORT AND RECOMMENDATION - 2

1996); *see also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Moreover, the Ninth Circuit recently denied the Agency's attempts to undermine the clear and convincing standard, stating the suggestion "lacks any support in precedent and must be rejected."  *Garrison v. Colvin*, No. 12-15103, 2014 WL 3397218 at *16, n.18 (9th Cir. July 14, 2014) (rejecting Agency's argument that the Court should apply a standard lower than clear and convincing in reviewing ALJ's evaluation of claimant's testimony where there was no evidence of malingering).  This Court is bound by the law of the Ninth Circuit.  Accordingly, because the ALJ did not find malingering, the Court finds that, in discounting Mr. Carter's testimony, the ALJ was required to provide clear and convincing reasons that are supported by substantial evidence.[3]

### 2.   *The ALJ provided a clear and convincing reason to discount Mr. Carter's testimony*

The ALJ discounted Mr. Carter's testimony for a number of reasons including his conviction for welfare fraud.[4]  Tr. 15.  In specific, the ALJ found Mr. Carter:

> was convicted for welfare fraud and went to prison in the late 1990's.  The crime of dishonesty involved the claimant defrauding the federal government of $25,000 over a ten-year period. (B5F/2-3).  When arrested, he had 10 different IDs in his possession and applied for food stamps under assumed names in different localities. (B5F/3).  Despite his conviction, prison sentence and probation, the claimant continues to want to work under the table. (B12/13; B15F/5).

---

[3] The Court also notes the ALJ did not identify the standard she applied in assessing Mr. Carter's testimony and there is thus no basis to conclude the ALJ even applied the standard urged by the Commissioner in her brief to the Court.

[4]  The ALJ also discounted Mr. Carter's credibility on the grounds (1) the medical evidence did not support his allegations, (2) his activities were inconsistent with his claim he could not deal with or trust other people, and (3) he was non-compliant with his psychotropic medications, and (4) he refused to re-enter the workforce due to his belief that he would be subjected to racism. Tr. 14-16

Tr. 15.   Mr. Carter does not challenge the ALJ's factual determinations but contends in his opening brief that while his "admitted legal history can be a factor in the credibility assessment," it should be used cautiously in light of his anti-social and personality disorders.  Dkt. 24 at 10. He further argues in his Reply brief that his criminal history is "too general" to discount his credibility given his mental disorders.  Dkt. 26 at 6.   These arguments imply Mr. Carter's 1998-1999[5] criminal conviction merely reflects conduct related to mental illness, not his credibility. But Mr. Carter has presented nothing showing a connection between mental illness and his fraud conviction.  Rather, it appears Mr. Carter was able to work and function prior to his alleged onset date having earned between $22,000 and $31,000 per year between 2000 and 2005.  Tr. 288. The record thus contradicts Mr. Carter's arguments, and supports the ALJ's determination.

The record also contradicts Mr. Carter's claim that his fraud conviction was "too general," for an adjudicator to rely on.  As noted above, the ALJ detailed how Mr. Carter's criminal conduct occurred over a lengthy period of time, involved some sophistication in that Mr. Carter used multiple identifications, and that it involved fraudulently obtaining governmental benefits.  These facts support a finding the fraud conviction was not "too general" and that it was reasonable for the ALJ to find the conviction undercut Mr. Carter's credibility.

Additionally, an ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  This includes consideration of a claimant's criminal history for crimes of dishonesty in discounting the claimant's credibility.  *See, e.g., Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (finding consideration of crimes involving moral turpitude, such as showing a false ID to a peace officer, are proper grounds for adverse credibility determination).   As such, the ALJ did not err

---

[5] Tr. 416.

REPORT AND RECOMMENDATION - 4

1  in discounting Mr. Carter's credibility based on his fraud conviction.

2         Because the ALJ provided a clear and convincing reason to discount Mr. Carter's

3  testimony, the Court need not determine whether the ALJ's other reasons were erroneous

4  because any error would not negate the validity of the overall credibility determination and thus

5  would be harmless.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

6  2008) (including an erroneous reason among other reasons to discount a claimant's credibility

7  does not negate the validity of the overall credibility determination and is at most harmless error

8  where an ALJ provides other reasons that are supported by substantial evidence).  Accordingly,

9  the Court affirms the ALJ's credibility determination.

10 **B.     The ALJ's evaluation of the opinions of Dr. Hopfenbeck and Dr. Czysz**

11        The ALJ rejected the opinions of Dr. Hopfenbeck, and Dr. Czysz.  Tr. 17.  The parties

12 agree the ALJ was required to give "specific and legitimate reasons," supported by substantial

13 evidence, to reject the doctors' opinions[6]; they disagree on whether the ALJ met that standard.

14 *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

15        *1.     Dr. Hopfenbeck*

16        The ALJ assigned little weight to Dr. Hopfenbeck's opinion that if Mr. Carter attempted

17 to work, "he would certainly become quickly paranoid, hostile, and full of resentment toward

18 coworkers and supervisors," on the grounds the opinion was inconsistent with Mr. Carter's

19 mental health testing and activities of daily living, i.e., Mr. Carter's ability to 1) maintain a 4.0

20 GPA at school while carrying a full load of courses, 2) use public transportation, and 3) spend

21 time at the public library. Tr. 17.  The ALJ further discounted Dr. Hopfenbeck's opinion noting

22 the doctor "did not attempt any cognitive testing" and instead relied on Mr. Carter's subjective

23

_____

[6]  Dkt. 24 at 6; Dkt. 25 at 7.

REPORT AND RECOMMENDATION - 5

report of symptoms which the ALJ found lacked credibility.  *Id.*  The ALJ erred.  First, the

mental health testing performed on Mr. Carter focused on his cognitive abilities.  Tr. 14, 16.  But

Mr. Carter's cognitive abilities are not at issue as Dr. Hopfenbeck did not opine Mr. Carter could

not work due to cognitive limitations.  Rather he opined Mr. Carter was limited because of his

fixed paranoid delusions. Tr. 410, 435, 448.

   For the same reason, while Mr. Carter's 4.0 grade average and full course load show his

cognitive ability is unimpaired, they do not contradict Dr. Hopfenbeck's opinions about the

impact of Mr. Carter's fixed delusions.  The Commissioner defends the ALJ arguing Mr. Carter

testified about "working with fellow students,"[7] and that since college requires "interaction" with

others, it was reasonable for the ALJ to conclude his community college activities contradicted

Dr. Hopfenbeck's opinions.  Dkt. 25 at 8-9.  But the ALJ never made these findings and instead

focused on Mr. Carter's 4.0 average, i.e., his cognitive ability.  The Commissioner's argument is

thus not one upon which the Court can rely.  *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225

(9th Cir. 1995) (Court reviews  ALJ's decision "based on the reasoning and findings offered by

the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been

thinking.").

   The ALJ also erred in discounting the doctor's opinion because Mr. Carter used public

transportation, and went to the public library. Tr. 17.  A material inconsistency between a

treating physician's opinion and a claimant's admitted level of daily activities can furnish a

specific, legitimate reason for rejecting the treating physician's opinion. *See, e.g., Rollins v.*

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  But there is no indication, here, that riding the

---

[7] The Court notes that while Mr. Carter testified that in his community college classes he worked with other students, he also stated that "things have been ugly, you know, in the past, and I had to get up and leave the room."  Tr. 59.

1    bus and going to the library are materially inconsistent with Dr. Hopfenbeck's opinion about Mr.

2    Carter's fixed delusions.  The doctor never indicated Mr. Carter could not ride a bus or sit by

3    himself in a library; the activities are dissimilar to the telemarketing job the ALJ found Mr.

4    Carter could perform; and the activities are not patently inconsistent with a person who suffers

5    from fixed paranoid delusions that limit the person's ability to meet the stresses of a workplace

6    and maintain appropriate behavior during a normal workweek.

7           And lastly, the ALJ erred in rejecting Dr. Hopfenbeck's opinion because the doctor "did

8    not attempt any cognitive testing" and instead relied on Mr. Carter's discredited subjective report

9    of symptoms.  Tr. 17.  The Commissioner does not defend these reasons but contends any error

10   the ALJ committed was harmless because the ALJ's other reasons were valid.  Dkt. 25 at 9.  The

11   argument fails because as discussed above the ALJ's other reasons were invalid.[8]

12          ***2.     Dr. Czysz***

13          The ALJ gave little weight to Dr. Czysz's opinion that Mr. Carter was markedly limited

14   in his ability to communicate and perform effectively in a work setting even with limited public

15   contact, and severely limited in his ability to maintain appropriate behavior in a work setting.  Tr.

16   452.  The ALJ found the "GAF" score of 39 that the doctor assessed as "inconsistent with his

17   own test results, as he found that he (the claimant) was 5/5 on serial 7's, had an adequate fund of

18   knowledge, an spelled 'WORLD' correctly forward and backward."  Tr. 17.  A GAF score of

19   39 indicates serious symptoms or a serious impairment in social, occupational, or school

20   _____

21   [8] Additionally, the record does not support a finding that Dr. Hopfenbeck disbelieved Mr. Carter,
      or that the doctor relied on Mr. Carter's statements more heavily than on his own clinical
      observations in reaching his conclusions.  Accordingly, substantial evidence does not support the

22   ALJ's finding that Dr. Hopfenbeck's opinion should be discounted because it relied on Mr.
      Carter's self-reports.  *See Ryan v. Commissn'r of Soc. Sec.*, 528 F.3d 1194, 1999-2000 (9th Cir.

23   2008).

REPORT AND RECOMMENDATION - 7

functioning.  *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, XX at 34 (4th ed. 1994) ("DSM IV").   Hence, it is inconsistent with Mr. Carter's 4.0 grade average which indicates not seriously impaired school functioning, and Mr. Carter's cognitive test scores as noted by the ALJ.   However, the ALJ erred in relying on Mr. Carter's cognitive abilities to discount all of Dr. Czysz's opinions.  Dr. Czysz did not opine Mr. Carter could not work due to cognitive limitations.  Rather he opined that based on the scores from the standardized Personality Assessment Inventory ("PAI") he administered, Mr. Carter scored as a person with "prominent hostility and suspiciousness who is also reporting significant problems in physical functioning."  Tr. 453.  Based on the test scores and his clinical assessment, Dr. Csysz opined Mr. Carter had marked or severe limitations in his ability to work due to his paranoid personality disorder, not because of his cognitive limitations.  Tr. 451-52.

The Commissioner defends the ALJ's reasoning arguing a 4.0 GPA shows Mr. Carter has the ability to interact "with a variety of peers and authority figures, and thus incompatible with Dr. Czsyz's opinion." Dkt. 25 at 10.  The argument fails because the ALJ never made these findings and instead focused on how a GAF score of 39 was inconsistent with his cognitive ability, i.e., serial 7 scores, fund of knowledge and spelling ability.  The Commissioner's argument is thus a post hoc argument which the Court can rely on.

Additionally, the ALJ erred by failing to address the PAI that Dr. Czsyz administered and his interpretation of Mr. Carter's PAI scores which supported his opinions.  An ALJ must explain why "significant, probative evidence has been rejected."   *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  The Commissioner argues this error is irrelevant. Dkt. 25 at 11. But neither the Commissioner nor the Court is in the position to weigh evidence of record that an ALJ never mentioned or assessed.  That was the ALJ's responsibility, at the administrative level,

1   not the Court's in the first instance on review.  *C.f.,  Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

2   Cir. 1995) (ALJ is responsible for weighing evidence).  Accordingly, the Court rejects the

3   Commissioner's relevance argument.

4   **C.      The Case Should be Remanded for Further Proceedings**

5          Mr. Carter argues that based on the opinions of Dr. Hopfenbeck and Dr. Czysz, which

6   should be credited as true, he cannot perform his past work, that he is therefore disabled as a

7   matter of law, and that the Court should remand the matter for an award of benefits.  Dkt. 24 at

8   11.  The Court rejects the argument because it is premised on Mr. Carter's argument that he

9   cannot interact with supervisors, co-workers, and the public, and the VE's testimony that a

10  person so limited could not perform any work, **not** the doctors' opinions.  *Id.* at 12.  Dr.

11  Hopfenbeck did not opine all work was precluded and instead indicated Mr. Carter might do

12  slightly better in an unsupervised work setting.  Tr.  410.  How much better is unclear because

13  neither the doctor nor the ALJ developed this potential work option.  Dr. Czysz opined Mr.

14  Carter would benefit from mental health treatment, and that the severity of his impairments

15  would last a maximum of one year.  Tr. 439.  The ALJ also did not develop this further to

16  determine whether with treatment, Mr. Carter would be more functional within a year and be

17  able to work.  In short, it is not clear from the record that the ALJ would be required to award

18  benefits even if the opinions of Dr. Hopfenbeck and Dr. Czysz were credited as true.  Remand

19  for benefits is thus not mandated.  *See Garrison v. Colvin,* 2014 WL 3397218 at *22-23 (Court is

20  required to remand for benefits  only where claimant meets all three conditions of the credit-as-

21  true rule[9] and the record establishes that there is no reason to seriously doubt the claimant is in

22

23  _____

[9] The three conditions are: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the

fact disabled).  Here, as Mr. Carter has not met all three conditions and because further administrative proceedings would be useful, the case should be remanded for further proceedings, and not for an award of benefits.

**CONCLUSION**

For the foregoing reasons, the Court recommends **REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four.  On remand, the ALJ should reevalaute the opinions of Dr. Hopfenbeck and Dr. Czysz, develop the record as needed, and reassess Mr. Carter's RFC and proceed to steps four and five as necessary.  The Court affirms the ALJ's assessment of Mr. Carter's credibility but grants the ALJ leave to reconsider that assessment, as appropriate.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **August 11, 2014.**  If no objections are filed, the Clerk shall note the matter for **August 15, 2014** as ready for the Court's consideration.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed **seven** pages.  The failure to timely object may affect the right to appeal.

DATED this 28th day of July, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

---

improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Garrison*, 2014 WL 3397218 at *22.

REPORT AND RECOMMENDATION - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

REPORT AND RECOMMENDATION - 11